**UNITED STATES of America,
Appellee,**

v.

**Emanuel JOHNSON, Defendant-
Appellant.**

**No. 73–1146.**

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1973.

Decided Dec. 20, 1973.

Kevin M. Keating, Boston, Mass., by appointment of the Court, with whom Charlotte Anne Perretta, Boston, Mass., was on brief, for appellant.

Lawrence P. Cohen, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Johnson was tried and convicted for distributing cocaine in violation of 21 U.S.C. § 841(a)(1). He appeals from the district court's ruling that he could not interrogate a former codefendant named Perry after it appeared that Perry would invoke the Fifth Amendment privilege against self-incrimination. Johnson asserts (1) that Perry was in no danger of self-incrimination, (2) that Perry had waived his Fifth Amendment privilege, and (3) that Johnson, in any event, had the right to question Perry before the jury.

Perry and one Hammond had pleaded guilty at the beginning of trial to the offense of which Johnson was charged. At the Rule 11 inquiry to establish the basis for Perry's plea, the following colloquy occurred:

"The Court: And the factual situation, as detailed by the United States Attorney earlier, it is understood by you to be correct—do you want him to detail it again?

Perry: Yes.

United States Attorney: As to Mr. Perry's involvement, the evidence will show . . . that the negotiations for this sale were conducted first by

Mr. Hammond and then by Mr. Perry, with the two government agents. On the date in question, April 20, 1972, the two agents picked up Mr. Hammond and Mr. Perry and proceeded to a certain location in the city of Boston, where subsequently Mr. Perry, after going back and forth to the car, came back along with Mr. Johnson, entered the car, and Mr. Perry produced two packs of material, handed them to the agent, for which the agent gave them $800.00, and that material was analyzed later and proved to be cocaine.

Perry: Well, I don't agree with that part where he said that Mr. Johnson and I went into the car. *Mr. Johnson did not enter the car,* and I am not sure of the quantities just mentioned, whether that is right or not. [Emphasis added.]

The Court: Except for that, however, the facts as detailed by the United States Attorney are correct?

Perry: Yes."

At Johnson's trial the prosecution presented testimony that Perry had promised a federal agent that he would contact one of his three sources of cocaine to arrange a sale. Perry directed the agent, a fellow agent, and Hammond to a location near the supplier's residence. Perry allegedly left the vehicle for several minutes and returned with a sample claiming it came from his supplier; then he left again, returning ten minutes later with Johnson, and both climbed into the car. One agent testified that he had told Johnson there was no need for him to enter the car, to which Johnson retorted: "I always go where my stuff goes." According to the government, Perry then produced the cocaine, received $800, left the vehicle with Johnson, and returned alone a short time later.

At the close of the government's case, Perry was called as the first defense witness. Approaching the bench, the Assistant United States Attorney asked the court to inquire outside the jury's presence if Perry would claim the privilege. If so, the government was opposed to his taking the stand. Perry's attorney then acknowledged recommending that his client assert the privilege, as he could still be indicted for conspiracy and had not yet been sentenced.

Court and counsel withdrew to chambers, where Perry's counsel reiterated his reasons for advising his client to claim the privilege; the government reiterated its objection to Perry taking the stand if he was going to claim the privilege; and Johnson's attorney insisted upon the need for Perry's testimony and the defendant's right to question Perry before the jury. At defense counsel's request, Perry was sworn and counsel was allowed to question him in chambers. Johnson's attorney asked his name, whether he had recently pleaded guilty to a charge of the sale of cocaine, when he was to be sentenced, whether he would refuse to answer any questions before the jury, and "is it your intention not to answer any questions, other than perhaps your name and address, which I put to you with regard to Mr. Johnson and yourself, on the ground of self-incrimination?" Perry replied in the affirmative. The court inquired whether counsel wanted to ask further questions which might relate to a possible waiver. Counsel replied that he would argue that matter to the court, and asked nothing further.[1] The court upheld Perry's claim of the privilege, ruling that it had not been waived and that Johnson could not call Perry merely to have him claim the privilege before the jury.

The defense then introduced testimony that Perry had come by unexpectedly to

---

1. It was not represented that questioning before the jury would be limited solely to the matter covered by Perry at the Rule 11 hearing (i. e. whether Johnson stepped into the car). No further questions were asked or intimated attempting to show that there were particular matters which could be answered without danger of incrimination.

elicit Johnson's help in obtaining a job. Johnson testified that, walking a dog, he accompanied Perry back to a waiting car where he chatted with Hammond, an acquaintance. He denied ever entering the car or mentioning "my stuff."

During the remainder of the trial Johnson twice reiterated his desire to call Perry to testify before the jury, but the court refused after ascertaining that counsel had no cause to believe that Perry would abandon his claim of privilege. Perry was meanwhile sentenced, but the court expressed the opinion that this did not wipe out the danger of incrimination.

■ We find no merit in Johnson's assertion that the court erred in supposing that Perry's testimony might actually tend to incriminate him. A trial judge may appraise a claim of privilege in light of his "personal perception of the peculiarities of the case" and should not be overruled unless it is "perfectly clear" that the witness is mistaken and that the answers "cannot possibly" incriminate. Hoffman v. United States, 341 U.S. 479, 487–488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). On this record, the court could reasonably conclude that Perry's apprehension of danger was not mistaken. While conviction, of course, removed any claim of privilege based upon liability for that offense, see, e. g., United States v. Romero, 249 F.2d 371, 375 (2d Cir. 1957), Perry remained open to a state or federal conspiracy prosecution.[2] United States v. Chase, 281 F.2d 225, 229 (7th Cir. 1960); cf. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946);

Ottomano v. United States, 468 F.2d 269, 271 (1st Cir. 1972), cert. denied 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973). The Fifth Amendment privilege protects federal witnesses against incrimination under state as well as federal law. Kastigar v. United States, 406 U.S. 441, 456–57, 92 S.Ct. 1653, 32 L.Ed. 2d 212 (1972); Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

■ Furthermore, Perry was under sentence for transferring separate quantities of cocaine on a different date. It could be inferred from his testimony that he regarded Johnson as one of his regular suppliers. Perry was not without apparent reason to fear that his testimony, especially on cross-examination, might provide clues to other illegal transactions. Cf. Maffie v. United States, 209 F.2d 225 (1st Cir. 1954). The privilege protects not only answers which directly reveal criminal activity, but also those that might furnish a link in the chain of evidence necessary to convict. Hoffman v. United States, supra, 341 U.S. at 486, 71 S.Ct. 814.

■ Johnson next contends that the privilege was waived by Perry's guilty plea and by the disclosures he made at the Rule 11 hearing. But the waiver of privilege to be inferred from the guilty plea is only for purposes related to a determination of guilt or innocence of the crime admitted. See McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); United States v. Karger, 439 F.2d 1108 (1st Cir. 1971). Pleading

---

2. Neither the practical unlikelihood of further prosecution, nor the Assistant United States Attorney's denial of an intention to charge conspiracy, negated Perry's privilege. United States v. Chase, 281 F.2d 225, 230 (7th Cir. 1960); United States v. Miranti, 253 F.2d 135, 138–139 (2d Cir. 1958). The prosecutor's statement that he did not intend to charge conspiracy was made outside Perry's presence and was not part of any bargain with him; it is questionable to what

extent it would bind the government. Cf. Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971); Commonwealth v. Benton, 356 Mass. 447, 252 N.E.2d 891 (1969). Even if binding, it would not provide the broad immunity required to deprive Perry of a claim of privilege. See Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); cf. 18 U.S.C. § 6002.

guilty to a crime does not waive the privilege not to incriminate oneself at other times in other crimes, any more than conviction of one crime erases the privilege as it relates to others. Constitutional privileges may not, in any event, be waived except as there is awareness of the consequences of the waiver. *See* Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949). While a defendant is presumed to understand when he pleads that he is waiving the privilege with respect to the particular crime, *see, e. g.,* United States v. Webb, 433 F.2d 400 (1st Cir. 1970), he would have no reason to suppose that he was otherwise forfeiting the privilege. Perry said at the Rule 11 hearing that he did not wish to testify at Johnson's trial. He was not, of course, advised that he was waiving any valid privilege he may have had not to do so.

■ It is true that, at the prior hearing, Perry, in response to the court's questions, described details of the cocaine transaction involving Johnson. Apart from the waiver to be imputed from the guilty plea, this testimony was arguably itself a limited waiver. Once an accused voluntarily takes the stand he opens himself to broad cross-examination, *see* Brown v. United States,[3] and when a witness voluntarily testifies to certain facts, he may not invoke the privilege as to details, *see* Roger v. United States.[4] But

"The waiver involved is limited to the particular proceeding in which the witness volunteers the testimony or the accused takes the stand. . . . His voluntary testimony before a coroner's inquest, or a grand jury, or other preliminary and separate proceeding, e. g. in bankruptcy, is therefore

not a waiver for the main trial. Nor is his testimony at a first trial a waiver for a later trial."

8 J. Wigmore, Evidence § 2276, at 470–72 (McNaughton rev. 1961; Supp. 1972). McCormick, Handbook of the Law of Evidence §§ 132, 141 at 281, 296–299 (2d ed. 1972). *See e. g.,* Ottomano v. United States, 468 F.2d 269, 273 (1st Cir. 1972); United States v. Goodman, 289 F.2d 256, 259 (4th Cir. 1961); United States v. Miranti, 253 F.2d 135, 139 (2d Cir. 1958); Jeffries v. United States, 215 F.2d 225, 226 (9th Cir. 1954); In re Neff, 206 F.2d 149, 152 (3d Cir. 1953).

Exceptions to this rule have been few. In Ellis v. United States, 135 U.S.App. D.C. 35, 416 F.2d 791, 805 (1969), where a nonindicted witness had waived the privilege by testifying before a grand jury, the waiver was held to extend to the trial of an indictment returned. That decision has been seriously questioned, *see* McCormick, *supra* at 298–99, and is, in any event, inapposite. Perry's Rule 11 hearing was not, like a grand jury hearing, causally linked to Johnson's trial. It was an entirely separate proceeding. Perry's responses were required as a predicate to acceptance of Perry's own guilty plea, and for no other purpose. Any waiver imputed from them should not extend beyond the waiver imputed from the plea itself: namely a waiver of Perry's privilege for all purposes related to the charge against himself.

■ Moreover, in *Ellis, supra,* 416 F.2d at 801, the court rightly or wrongly assumed that the witness' testimony at trial would cover nothing not already disclosed to the grand jury. Here, it is plain that there would be no way—nor was any ever proposed—to limit Perry to his earlier remark. The government was entitled to cross-examine, and Perry was plainly exposed to the risk of great-

---

3. 356 U.S. 148, 155–156, 78 S.Ct. 622, 2 L. Ed.2d 589 (1958).

4. 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

er legal detriment. McCormick, *supra* at 297–98. We hold that Perry did not waive his right to assert the privilege at Johnson's trial.

 Finally, we find without merit the claim that Johnson had a right to have Perry called as a witness before the jury.[5] Bowles v. United States, 142 U.S.App.D.C. 26, 439 F.2d 536 (en banc 1970); Commonwealth v. Greene, 445 Pa. 228, 285 A.2d 865 (1971). If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him. Namet v. United States, 373 U.S. 179, 186, 189, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); Bowles v. United States, *supra*, 142 U.S.App.D.C. at 26, 439 F.2d at 541. Obviously, before excluding a witness, the court must first establish reliably that the witness will claim the privilege and the extent and validity of the claim. Here the court wisely held a *voir dire* at which Johnson's counsel was invited to question the proposed witness under oath and on the record. Only after Perry had testified that he would claim the privilege comprehensively did the court rule to exclude him. The court indicated that it would reconsider whenever counsel could show a reasonable likelihood that Perry would or must answer some or all questions. While the loss of Perry's testimony was regrettable, it could not be compelled, and Johnson had no right to bring Perry before the jury solely to have him claim the Fifth Amendment.

Affirmed.

5. Cases cited by Johnson which hold that it may not always be reversible error to ask a witness questions before a jury with knowledge that the privilege will be invoked obviously fall short of establishing that the practice is either desirable or mandatory. *See, e. g.,* United States v. Terry, 362 F.2d 914 (6th Cir. 1966).