**UNITED STATES of America, Appellee,**

v.

**Anthony ZIRPOLO, Defendant, Appellant.**

**No. 81–1784.**

United States Court of Appeals, First Circuit.

Argued March 7, 1983.

Decided April 5, 1983.

Paul P. Caradonna, Everett, Mass., for defendant, appellant.

Vincent L. Gambale, Attorney, Dept. of Justice, Washington, D.C., with whom William F. Weld, U.S. Atty., and Martin D. Boudreau, Sp. Atty., Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and CAFFREY,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Anthony Zirpolo was convicted of one count of conspiracy to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and three counts of possession and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On appeal he raises two issues: (1) whether the district court erred by ruling that a former co-defendant who had pled guilty but had not been sentenced could invoke the fifth amendment privilege against self-incrimination, and (2) whether the district court erred by ruling that an affidavit signed by the same co-defendant exculpating Zirpolo was inadmissible because it lacked corroboration. We affirm.

The facts can be summarized briefly. Zirpolo was indicted along with two co-defendants, Joseph Vecchio and Edward Dalton. Prior to trial, Dalton entered into a plea bargain with the government whereby he pled guilty to three of the five counts against him. The government promised to dismiss the two remaining counts when he was sentenced. Dalton had yet to be sentenced when Zirpolo was tried.

At Zirpolo's trial, agent Keefe of the Drug Enforcement Agency, testified that he purchased an ounce of cocaine from Dalton in the spring of 1980. According to Keefe, Dalton referred to his boss as "Zip" and arranged a meeting between Keefe and Zirpolo after Keefe complained about the quality of the cocaine he had purchased. Keefe testified that he met with Zirpolo and Dalton on June 25, 1980 and discussed the quality of the cocaine that Zirpolo could supply in the future. In September 1980 Keefe spoke to Zirpolo over the telephone and arranged to purchase more cocaine. On September 11, 1980 Keefe arrived at the Impact Chemical Company in East Boston, Zirpolo's place of business, and saw Zirpolo who pointed to a metal box saying "it's over there." Keefe paid Zirpolo $3,600 and took the box which was later found to contain cocaine.

After the government had rested, Zirpolo informed the judge that he had subpoenaed Dalton to testify. After a recess, Dalton and his attorney appeared in the courtroom, and Dalton's attorney stated that his client, invoking his fifth amendment privilege, declined to testify. Zirpolo then sought to introduce an affidavit signed by Dalton stating that Zirpolo had nothing to do with the drug sales to agent Keefe; that drugs were not discussed when Dalton, Zirpolo and Keefe met on June 25; and that as far as Dalton knew, Zirpolo had no knowledge of the contents of the package Keefe picked up at the Impact Chemical Company in September.[1] Both the government and

---

* Of the District of Massachusetts, sitting by designation.

1. The affidavit states:

   I, EDWARD DALTON, hereby state as follows:

   (1) I am a defendant in *United States v. Dalton* and have pleaded guilty to 3 counts of a 5-count indictment which charges me with conspiracy and distribution of cocaine.

   (2) My co-defendant in this case is Anthony Zirpolo.

   (3) John O'Master, who I met while visiting Mr. Zirpolo at MCI Norfolk, introduced me to Agent Joseph Keefe who I later sold cocaine to.

   (4) Mr. Zirpolo had nothing to do with the cocaine sales to Keefe of May 20, 1980, June 19, 1980 and June 20, 1980.

   (5) My daughter and I picked up Mr. Zirpolo at Avis near the airport on June 25, 1980 and were met at the airport Hilton by Mr. Keefe. During the discussions we had, we did not talk about drugs as my daughter was present.

   (6) On September 11, 1980 or maybe the day before, I delivered a package to Mr. Zirpolo's

Dalton's attorney objected to the introduction of the affidavit. After hearing argument on both Dalton's right to plead the fifth amendment and the admissibility of the affidavit, the district court ruled that Dalton could invoke the fifth amendment privilege because there was a possibility that his testimony might reveal evidence of other crimes and because two of the counts against him were still pending. The court further ruled that the affidavit was inadmissible because it lacked corroboration. Zirpolo appeals from both rulings.

## I.

Zirpolo's contention that Dalton could not invoke the fifth amendment privilege against self-incrimination is incorrect. A witness who has pleaded guilty may still invoke the privilege as long as there is a possibility that his testimony might incriminate him of other crimes.[2] *United States v. Johnson,* 488 F.2d 1206, 1209 (1st Cir.1972). *Accord United States v. Yurasovich,* 580 F.2d 1212 (3d Cir.1978); *United States v. Roberts,* 503 F.2d 598 (9th Cir.1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). In deciding that a witness's testimony might incriminate him, a district judge "may appraise a claim of privilege in light of his 'personal perception of the peculiarities of the case' that the witness is mistaken and that the answers 'cannot possibly' incriminate." *United States v. Johnson,* 488 F.2d at 1209, *quoting Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). *See also United States v. Lowell,* 649 F.2d 950, 961 (3d Cir.1981).

The record reveals ample basis for the district court's determination that Dalton's testimony might tend to incriminate him. Although the government had agreed to recommend dismissal of the two counts to which Dalton had not pled guilty, these counts had not yet been dismissed as of the time of Zirpolo's trial. The possibility remained, therefore, that the court would not approve of the plea bargain, *see United States v. Escobar,* 653 F.2d 34 (1st Cir. 1981); Fed.R.Crim.P. 11(e)(2), and that Dalton would have to stand trial on those counts. *See also United States v. Valencia,* 656 F.2d 412 (9th Cir.), *cert. denied,* 454 U.S. 877, 903, 102 S.Ct. 356, 411, 70 L.Ed.2d 186, 222 (1981).

There was also a real possibility that Dalton's testimony would incriminate him of crimes other than the ones with which he had been charged. For one thing, Dalton signed an affidavit, under the penalty of perjury, that referred to some of the specific events at issue in Zirpolo's trial. *See* note 1, *supra.* Dalton's attorney represented to the court that he feared his client would open himself up to a perjury charge if he testified about the events described in the affidavit. Given the substantial evidence presented at the trial which contradicted the statements in the affidavit, it was hardly unreasonable for the district court to believe it possible that Dalton's in-court testimony would tend to incriminate him of perjury.

There was also a distinct possibility that Dalton's testimony, particularly upon cross-examination, would have furnished a link to evidence of his involvement in other drug-related crimes. All parties agree that Keefe's conversations with Dalton included discussions of other drugs. Zirpolo, however, argues that such discussions could have been excluded from Dalton's testimo-

---

place of business to be picked up by Mr. Keefe. As far as I know, Mr. Zirpolo did not know what was in that package.
I have read what is stated above and it is true to the best of my belief.
Signed under the penalties of perjury. September 21, 1981.

**2.** The possible effect of testimony by an unsentenced witness on his subsequent sentencing is a further matter which courts have weighed in permitting invocation of the privilege. *See Jones v. Cardwell,* 686 F.2d 754 (9th Cir.1982); *United States v. Trejo-Zambrano,* 582 F.2d 460 (9th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978). As Dalton's testimony was potentially incriminating for other reasons, however, we need not address the impact it might have had on his sentencing.

ny.[3] This is unrealistic. Even if it may sometimes be feasible for a district court to reconcile the defendant's right to present witnesses with a witness's privilege against self-incrimination by limiting the scope of the latter's testimony, *see United States v. Pardo,* 636 F.2d 535 (D.C.Cir.1980); *United States v. Moore,* 682 F.2d 853 (9th Cir.1982), "[c]ourts have often recognized the need to prevent coconspirators from 'whitewashing' each other through use of testimony unchallengeable for one reason or another." *United States v. Lowell,* 649 F.2d at 962. Because the conversations relating to other drugs here were contemporaneous with the very events at issue in Zirpolo's trial, and would have shed light upon Dalton's dealings with Keefe, it clearly was important to allow the government to cross-examine Dalton about these conversations had he testified. Given this fact we do not think that the district court erred in ruling that Dalton could refuse to testify altogether.

Zirpolo relies upon *United States v. Pardo,* 636 F.2d 535, but even assuming we were to agree with *Pardo* in all respects—a determination we need not now make—that case is distinguishable. In *Pardo* the co-defendant who sought to invoke the fifth amendment privilege had already been convicted and sentenced. There was thus no possibility, as there was here, that the co-defendant would still have to stand trial on the charges for which he had been indicted. Moreover, in *Pardo* there was no indication that the witness's testimony would lead to any evidence of other crimes. The District of Columbia Circuit was of the impression that the witness could easily testify as to the relevant transactions without implicating any other criminal conduct he might have engaged in. There was no suggestion, as there is here, that the witness's·testimony about the events in question at the trial would likely involve discussion of other crimes. *See United States v. Lowell,* 649 F.2d at 963 (*Pardo* is inapplicable where the

government's impeachment would likely uncover evidence of other crimes related to the same pattern of activity at issue in the trial).

## II.

■ Given Dalton's unavailability to testify, Zirpolo argues that his affidavit should have been admitted as a statement against interest under Rule 804(b)(3) of the Federal Rules of Evidence. The rule permits the introduction of hearsay statements where the declarant is unavailable and the statement

> was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Although we do not decide the issue, we shall assume for purposes of discussion that the affidavit was a statement against Dalton's penal interest. Still, the district court did not err in refusing to admit it given the absence of circumstances clearly corroborating its trustworthiness.

We discussed Rule 804(b)(3)'s corroboration requirement in *United States v. Barrett,* 539 F.2d 244 (1st Cir.1976). We stated

> [T]here is no question that Congress meant to preclude reception of exculpatory hearsay statements against penal interest unless accompanied by circumstances solidly indicating trustworthiness. This requirement goes beyond minimal corroboration. Trial judges will have to make an assessment case by case . . . . In cases that are open to reasonable dif-

---

**3.** Zirpolo also claims that the government agreed to exclude testimony concerning other drugs. Our review of the record only shows that the government agreed not to introduce in its direct case testimony that agent Keefe dis-

cussed other drugs with Dalton. Such an agreement, of course, would not bar the government from impeaching Zirpolo's witnesses by referring to their dealings with other drugs.

ferences, this court is unlikely to substitute its judgment for that of the district court.

*Id.* at 253.

In the present case there is not only little evidence tending to corroborate the trustworthiness of Dalton's affidavit, the circumstances suggest that it might well be untrustworthy.[4] The affidavit was presented to Dalton, after he had pled guilty, by the constable who was serving Zirpolo's subpoena. Dalton's attorney was not notified and was not present when Dalton executed it under penalties of perjury. When later Dalton appeared with his attorney at Zirpolo's trial, the attorney vigorously opposed its use, saying that "Mr. Dalton was not aware that he didn't have to sign this or accept this, and it seems to me that the statement therefore amounts to a hoax." Dalton's attorney expressed fear that the affidavit could open Dalton to a perjury charge.

We think that whatever weight might normally attach to the fact the document was signed under penalty of perjury was severely diminished by the circumstances under which it was executed. Having pled guilty to acts touched upon in the affidavit, the uncounselled Dalton might have felt he was immune from further prosecution and could say whatever would most assist a friend. *See United States v. Trejo-Zambrano,* 582 F.2d 460. As we stated in *United States v. Annese,* 631 F.2d 1041 (1st Cir. 1980), "The bare testimony of a co-defendant charged with the same crimes as the one calling him as a witness is utterly devoid of corroboration. Indeed the whole scenario argues against trustworthiness." *Id.* at 1045.

*Affirmed.*

4. At trial Zirpolo argued that one witness had corroborated the affidavit by testifying that Dalton had told him that he had delivered a package to Impact Chemical Company. This testimony, however, goes only to the fact that a package was delivered, not to the essential statement in the affidavit that as far as Dalton was aware Zirpolo did not know that the package contained cocaine. *See* note 1, *supra.*