**UNITED STATES of America, Appellee,**

v.

**James M. ALBERT,
Defendant, Appellant.**

**No. 84–1416.**

United States Court of Appeals,
First Circuit.

Argued April 4, 1985.

Decided Sept. 26, 1985.

Claire A. Julian, Bangor, Me., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Or., with whom Richard S. Cohen, U.S. Atty., Portland, Or., was on brief for appellee.

Before COFFIN, BREYER and TORRU-ELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant James M. Albert was tried and convicted of aiding and abetting in the commission of a robbery of a federally-insured bank in violation of 18 U.S.C. §§ 2113(c) and 2. He was sentenced to a term of imprisonment of five years. The issues presented here are: (1) whether the district court erred in denying appellant's motion for relief from joinder of parties; (2) whether it properly received in evidence a certified copy of a Federal Deposit Insurance Corporation (FDIC) issued certificate of insurance; (3) whether the district court erred in sustaining a proposed defense witness' refusal to testify; and (4) whether it erred in refusing to grant appellant's motion for judgment of acquittal. For the reasons set forth below, we affirm the district court.

I

Appellant unsuccessfully moved before trial to sever his case from that of a codefendant named Arlen Lewis. The basis of

this request was that he would be prejudiced by a tape-recorded conversation between Lewis and a confidential government informant. The conversation partly referred to the car that had been used to commit the robbery and which belonged to Albert. Since Lewis did not testify and, therefore, was not available for cross-examination, appellant claims the district court committed reversible error in denying his motion for severance.

■ A motion for severance is addressed to the discretion of the trial court, and to prevail a defendant must make a strong showing of prejudice. *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.1983). We review a trial court's denial of a severance motion for abuse of discretion and reverse only if denial deprived defendant of a fair trial, resulting in a miscarriage of justice. *Id.* Such is not the case here.

■ Courts need not grant severance unless the statements of non-testifying defendants clearly inculpate his codefendants. *See United States v. Digregorio*, 605 F.2d 1184, 1190 (1st Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *see also United States v. Brooklier*, 685 F.2d 1208, 1218 (9th Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). In the instant case Albert was not mentioned in the tape that was heard by the jury. Moreover, there is nothing in the tape suggesting that the car's owner knew that the car was to be used in the robbery or that he had actively assisted in the commission of the offense. Accordingly, the court below did not abuse its discretion in denying severance on the basis of the taped conversation between Lewis and the informant.

■ Appellant also asserts that it was error to admit the taped conversation during trial. He claims support in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton*, however, has no application unless the hearsay utterances of a defendant inculpate a codefendant. *United States v. Digregorio, supra*, 605 F.2d at 1190; *see also United States v.*

*Guillette*, 547 F.2d 743, 755 (2d Cir.1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). Since the codefendant's extrajudicial statements in no way identified appellant as associated with the robbery, *Bruton* is inapposite to the facts of the instant case.

## II

■ Appellant's next claim of error relates to the admissibility of a certified copy of the robbed bank's FDIC—issued certificate of insurance. The Government offered the document to show that the bank was federally insured. 18 U.S.C. § 2113. The district court admitted the certificate under Fed.R.Evid. 803(6). Albert duly objected to the admission of the certificate on the ground it constituted hearsay evidence and could not be admitted under the business records exception to the hearsay rule.

The business records exception to the hearsay rule is codified in Fed.R.Evid. 803(6). Under the rule, records kept in the course of regularly conducted business activity are admissible unless the circumstances indicate lack of trustworthiness. *United States v. Patterson*, 644 F.2d 890, 900 (1st Cir.1981). The determination of whether a foundation has been laid for the application of this rule, and whether the circumstances indicate lack of trustworthiness is within the discretion of the district court. *Id.* The record shows the court below did not abuse its discretion in admitting the certificate under Fed.R.Evid. 803(6).

First, the robbed bank's internal auditor identified the exhibit as being a certified copy of the bank's FDIC issued certificate of insurance. The auditor testified that he had first-hand knowledge that the bank was federally-insured. Also, he stated that the certificate was maintained within the ordinary course of business at the Bangor Savings Bank, and that it had been in full effect the day of the robbery. The Government thus laid a proper foundation, through a competent witness, for the admission of the certificate as a business record under Fed.R.Evid. 803(6). *See Unit-*

ed States v. Riley, 435 F.2d 725, 726 (6th Cir.1970). Second, there was no question that the certificate was trustworthy or that the institution was, as stated in the certificate, federally insured. Indeed, Albert offered no evidence contradicting the prosecutor's evidence of the bank's insured status. *United States v. Baldwin,* 644 F.2d 381, 385 (5th Cir.1981). Therefore, the district court did not abuse its discretion admitting the insurance certificate as a business record under Fed.R.Evid. 803(6). *See United States v. Wingard,* 522 F.2d 796, 797 (4th Cir.), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 792, 46 L.Ed.2d 648 (1976).

### III

Appellant claims that the trial court erred in sustaining the assertion of fifth amendment privilege by Richard Higgins, a codefendant in the case at bar. Albert had sought Higgins' purportedly exculpatory testimony, but had been deterred by the codefendant's invocation of his right not to incriminate himself. Higgins had previously pled guilty to federal bank robbery charges and was serving his sentence. After hearing argument on the issue the court below ruled that Higgins could invoke the fifth amendment privilege because there was a possibility that his testimony might reveal evidence of other crimes. The record reveals ample basis for the district court's ruling.

■ First, by Higgins' own admission, his testimony at appellant's trial would have differed substantially from statements he had made at the time he was sentenced. Thus, it was reasonable for the district court to believe that Higgins' testimony would have tended to incriminate him for perjury. *United States v. Zirpolo,* 704 F.2d 23, 25 (1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 87, 78 L.Ed.2d 96 (1984). Second, there was also a distinct possibility that Higgins' testimony would have furnished a link to evidence of his involvement in unindicted state crimes. *See In re Brogna,* 589 F.2d 24, 27 (1st Cir.1978) (the claim of privilege against self-incrimination may be based on the fear of state as well as

federal prosecutions). As noted by the district court, any testimony provided by Higgins could have exposed him to prosecution in state courts for the bank robbery to which he had pleaded guilty in federal court.

Appellant nonetheless argues that state prosecutors had disclaimed interest in prosecuting Higgins for state crimes related to the robbery. Higgins did not receive immunity from state prosecution of bank robbery charges. Thus, he would have had to rely on informal warranties of non-prosecution for unindicted state crimes. Verbal assurances not to prosecute, however, are not coextensive with the fifth amendment privilege against self-incrimination. *United States v. D'Apice,* 664 F.2d 75, 78 (5th Cir.1981). Accordingly, absent a grant of immunity from prosecution, Higgins was entitled to assert his fifth amendment privilege as protection against risking self-incrimination for unindicted state crimes.

■ Albert further claims that by pleading guilty and having spoken out at his sentencing, Higgins waived any fifth amendment right he could have entertained. This claim is meritless. The waiver of privilege to be inferred from a guilty plea or sentencing is strictly limited and does not amount to a total surrender of the privilege with respect to other crimes. *See United States v. Johnson,* 488 F.2d 1206, 1209–10 (1st Cir.1973). As we noted in *Johnson,* "pleading guilty to a crime does not waive the privilege not to incriminate oneself at other times in other crimes, any more than conviction of one crime erases the privilege as it relates to others." *Id.* We are satisfied that Higgins did not forfeit during his sentencing his right to assert the privilege during Albert's trial. Consequently, the district court did not err in ruling that Higgins could refuse to testify on appellant's behalf.

■ Given Higgins' unavailability to testify, Fed.R.Evid. 804(b)(2), appellant urged the trial court to admit as a statement against penal interest under Fed.R.Evid. 804(b)(3) transcripts of that codefendant's

prior testimony taken at the time of his sentencing for federal bank robbery charges. At that time, Higgins professed that appellant was not privy to the plan to rob a bank when he lent his car to codefendants in the instant case. The trial court refused to admit the transcripts under Fed.R.Evid. 804(b)(3). Appellant contends that the transcripts should have been admitted in lieu of Higgins' live testimony.

In *United States v. Barrett*, 539 F.2d 244, 249–53 (1st Cir.1979), we discussed the history and purpose of Fed.R.Evid. 804(b)(3). We concluded that "[a]s finally enacted, Rule 804(b)(3) requires a two-staged analysis: first, do the offered remarks come within the hearsay exception as a 'statement against interest?' and second, if they do, is there sufficient corroboration to clearly indicate trustworthiness?" *Id.* at 251. Against these principles, appellant's claim must fail.

First, Higgins' "penal interest" may no longer have been at stake when he testified at his own sentencing for federal bank robbery charges. Convicted defendants speak at allocution during sentencing procedures to help themselves, not to be sentenced to a longer term of incarceration. In this context, then, the statement itself is clearly self-serving even to the extent that defendant admits his own criminal conduct, for he is seeking favorable treatment for himself. *See* D.W. Louisell & C.B. Mueller, *4 Federal Evidence*, § 489, p. 1137. Thus, the testimony in question did not derive reliability from tending to be against the declarant's penal interest, as required by Fed.R.Evid. 804(b)(3). *United States v. Atkins*, 618 F.2d 366, 373 (5th Cir.1981).

Second, even assuming, *arguendo*, that Higgins' sentencing transcript was a statement against Higgins' penal interest, the district court did not err in refusing to admit it given the absence of circumstances clearly corroborating its trustworthiness. As we stated in *United States v. Annese*, 631 F.2d 1041 (1st Cir.1980), "The base testimony of a co-defendant charged with the same crime as the one calling him as a witness is utterly devoid of corroboration.

Indeed, the whole scenario argues against trustworthiness." *Id.* at 1045. The record here reveals no evidence to corroborate the trustworthiness of Higgins' proffered testimony. Accordingly, the court below correctly refused to admit the codefendant's sentencing transcript in lieu of Higgins' live testimony. *See United States v. Metz*, 608 F.2d 147, 157 (5th Cir.1980); *United States v. Bagley*, 537 F.2d 162, 165–68 (5th Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977).

## IV

Finally, appellant contends that the evidence was insufficient to sustain his conviction for aiding and abetting a bank robbery.

■ A defendant to be an aider and abetter must know that the activity condemned by the law is actually occurring and must intend to help the perpetrator. *United States v. Tarr*, 589 F.2d 55, 59 (1st Cir. 1978). Albert argues the evidence was insufficient to show that he had knowledge of the codefendant's intent to commit a bank robbery when he lent them his car.

■ In reviewing a conviction challenged on the basis of insufficiency of evidence, the court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Samalot-Pérez*, 767 F.2d 1, 4 (1st Cir.1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Having reviewed the record with this standard in mind, we find appellant's challenge without merit.

First, the prosecution produced testimony that before the robbery the defendant was present in a bar where discussions about a heist with a shotgun were taking place. A government witness also testified that Albert was in the immediate area where the robbery was discussed. *See United States v. Patterson*, 459 F.2d 1389

(9th Cir.1972) (per curiam). Second, appellant was intimately involved in the actions of the codefendants shortly after the robbery. Indeed, Albert and a codefendant named Arlen Lewis helped John Baptiste St. Pierre, another codefendant, to escape the day after the robbery. At that time, the three men openly discussed the fact that Lewis and Albert had watched the previous night a television news account of the robbery, and that they need have no fear of being identified from the blurry bank surveillance photograph shown in the newscast. In addition, Lewis bought a copy of a local newspaper carrying an article of the bank robbery. This article, like the television newscast, was fully discussed in Albert's presence. Jurors are entitled to draw reasonable inferences from subsequent conduct attributed to previous intent. *United States v. Quejada-Zurique*, 708 F.2d 857, 861 (1st Cir.1983); *see also United States v. Burkeen*, 350 F.2d 261, 265–66 (6th Cir.), *cert. denied*, 382 U.S. 966, 86 S.Ct. 457, 15 L.Ed.2d 369 (1965). Thus, the jury here could have reasonably inferred that conversations like the ones noted above would only take place among people showing a common interest in the robbery from the outset. *See* 1 Wharton's Criminal Evidence (13th Ed.) § 209, p. 438.

In sum, from the evidence of events preceding and immediately following the robbery, reasonable jurors could have concluded that Albert was privy to bank robbery plans. Accordingly, the evidence presented was sufficient to support the judgment of conviction in the instant case.

*Affirmed.*