# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 16, 2003 Session

## STATE OF TENNESSEE v. LESTER ARNOLD CLOUSE

### Appeal from the Criminal Court for White County
### No. 00686B    Lillie Ann Sells, Judge

---

### No. M2002-00124-CCA-R3-CD - Filed January 30, 2004

---

The Appellant, Lester Arnold Clouse, was convicted by a White County jury of five counts of setting fire to land, two counts of aggravated assault, and one count of resisting arrest. These convictions resulted in an effective sentence of twenty-one years, eleven months, and twenty-nine days. On appeal, Clouse raises three issues for our review: (1) whether the evidence was sufficient to convict him of setting fire to land and aggravated assault; (2) whether the trial court erred by denying his motion for a mistrial after a co-defendant invoked his Fifth Amendment privilege and testified before the jury that he had been threatened; and (3) whether the jury instruction regarding circumstantial evidence was proper. After review of the record, we conclude that the errors resulting from the co-defendant's invocation of his Fifth Amendment privilege at trial affected the jury's verdict. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed; Remanded for New Trial.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

John E. Appman, Jamestown, Tennessee, for the Appellant, Lester Arnold Clouse.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Helena Walton Yarbrough, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General, *Pro Tem*; and Howard Chambers, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On October 26, 1999, numerous fires were set along the edge of public roads in four Tennessee counties, including White County. The White County Sheriff's Department received several calls from landowners reporting that a small suspicious black car was seen in an area of

White County where fires were occurring. One witness specifically identified the Appellant as the passenger in "a small black compact type car." As this witness turned and looked in the direction the car had come from, she noticed a fire on the right-hand side of the road. Just as the car crested the hill and disappeared, she noticed another fire along the side of the road.

Because of the reports made to both Putnam and White County Sheriffs' Departments, several law enforcement officers were patrolling the area searching for a small dark car. David Gibbons, a Putnam County deputy sheriff, spotted the car and initiated a traffic stop. While Gibbons was checking the license of the driver, Deputy Bill Harris arrived, and the two deputies walked back towards the car. The Appellant and the driver of the car, Michael Shane Carter, were standing outside the vehicle. Deputy Gibbons proceeded to place Carter under arrest pursuant to an outstanding capias he discovered when checking his license. Upon attempting to conduct a security search of the Appellant, he refused to put his hands on top of the car, insisting that he had done nothing wrong. Despite instructions to the contrary, the Appellant kept reaching into the backseat area of the car where a crossbow and arrows were located. Deputy Harris reached out to stop the Appellant by grabbing his arm, but the Appellant jerked away and retreated to the front of the vehicle. He then reached into his pocket, removed a pocket knife and opened the blade. He proceeded to wave the knife at the deputies, while ordering them to stay away. The deputies tried to calm the Appellant, but he began running down the road and eventually into a field. The Appellant repeatedly stopped and ordered the deputies to stay back. The deputies were pursuing the Appellant with their weapons drawn. At one point, the Appellant pulled a cell phone from his pocket and called his mother, telling her that the officers were trying to kill him. Eventually other deputies arrived, and the Appellant was subdued with pepper spray and taken into custody.

On September 12, 2000, a White County grand jury returned two indictments against the Appellant charging him with two counts of aggravated assault and two counts of resisting arrest. A second multi-count indictment was subsequently returned charging the Appellant with seventeen counts of setting fire to land. These indictments were later consolidated. The Appellant's trial began October 3, 2001. At the conclusion of its proof, the State dismissed twelve counts of setting fire to land and one count of resisting arrest. The jury convicted the Appellant of the remaining five counts of setting fire to land, two counts of aggravated assault, and one count of resisting arrest. The Appellant was subsequently ordered to serve an effective sentence of twenty-one years, eleven months, and twenty-nine days. The Appellant's motion for new trial was denied on August 27, 2002, with this appeal following.

## 1. Sufficiency of the Evidence

On appeal, the Appellant asserts that the evidence presented at trial was insufficient to support his convictions for setting fire to land and for aggravated assault. He does not challenge his conviction for resisting arrest. In considering this issue, we apply the rule that, where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319,

99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e).  Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)).  However, as in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

### a.  Setting Fire to Land

Before an accused can be convicted of setting fire to personal property or land, the State must prove beyond a reasonable doubt that the accused "knowingly damage[d] any personal property, land, or other property . . . by means of a fire or explosion: (1) [w]ithout the consent of all persons who have a possessory or proprietary interest therein; or (2) [w]ith intent to destroy or damage any such property for any unlawful purpose."  Tenn. Code Ann. § 39-14-303(a) (2003).

The Appellant argues there is "no proof" that he set the fires for which he was convicted. He asserts that the only evidence presented was witness testimony regarding a small dark car in the area and that the Appellant was seen and later arrested in a small black car.  While we cannot agree with the Appellant's assertion that "no proof" supports his convictions, a careful review of the evidence in the record reveals that the State's proof against the Appellant is wholly circumstantial as is often the case in the crime of arson.

There is no dispute that the State proved beyond a reasonable doubt that, on October 26, 1999, several fires were set along a roadway in White County.  The landowners each testified regarding the fires, the damages done to their land, and that no consent had been given to start a fire.

The Appellant challenges only the proof regarding his identity as the perpetrator of the crimes. The circumstantial proof presented by the State established that several witnesses in the area reported seeing a small dark colored car in the area where the fires were set. Testimony established that the car was being driven "ridiculously slowly" and was suspicious. A principal witness identified the Appellant as the passenger in a small dark car, which passed her home. Her attention was directed to the car after one of the occupants of the vehicle "yelled something out the window." This witness, who was retired from law enforcement, observed fires alongside the road, both in the direction from which the car had come and, after passing her house, the direction in which the car left. Both fires were on the passenger side of the car. Eventually deputies stopped a small black car in the area. The Appellant was a passenger in that car. When deputies attempted to question the Appellant, he confronted them with a knife and fled. Viewing this evidence in the light most favorable to the State, we conclude that the circumstantial evidence in this case is sufficient to support the jury's verdict that the Appellant knowingly set the fires as charged in the indictment.

**b. Aggravated Assault**

The Appellant also challenges his convictions for aggravated assault against Deputies Gibbons and Harris. He asserts that there is "no evidence that [he] intentionally or knowingly caused the officers to reasonably fear imminent bodily injury." This is because, according to the testimony of the officers, "[he] ran from them," or as one described it, "[h]e back-peddled down the road."

To sustain convictions of aggravated assault under the facts of this case, the State was required to prove that the Appellant "[i]ntentionally or knowingly cause[d] another to reasonably fear imminent bodily injury" by the use or display of a deadly weapon. Tenn. Code Ann. § 39-13-101(a)(2), -102(a)(1)(B) (2003). After review of the record, we conclude that the evidence is sufficient to establish these elements.

Both Deputies testified that the Appellant pulled a knife from his pocket and brandished it at them. The Appellant was irate and refused to put the knife down despite repeated requests from the deputies. Deputy Harris testified that, despite having their guns drawn, it was possible for the Appellant to strike them before they could shoot him. Each deputy testified that he feared imminent bodily injury.

The Appellant does not dispute the fact that he displayed a knife to the deputies. He only asserts that their fear of imminent bodily injury was unreasonable in light of the fact that their weapons were drawn and he was running from them. We find this argument without merit. After listening to the testimony, the jury obviously accredited the testimony of the deputies. We conclude that the proof was legally sufficient to support the convictions.

## 2. Co-defendant's Invocation of Fifth Amendment Privilege

The Appellant next asserts that the trial court erred in refusing to grant a mistrial based upon prosecutorial misconduct.[1] The alleged misconduct resulted from the State's action in improperly calling the co-defendant as a witness and in improperly eliciting testimony before the jury. The following pertinent colloquy occurred during direct examination:

[STATE]        Mr. Carter, You're a co-defendant in this case are you not?
[CARTER]    Yes.
[STATE]        . . . Mr. Carter, were you the person that Officer Givens (sic)[2] stopped out in White County?
[CARTER]    Yes Sir.
[STATE]        And who was with you?
[CARTER]    Mr. Clouse.
[STATE]:       Now if I could, you indicated to me earlier that you didn't want to testify today?
[CARTER]:   No, I don't.
[STATE]:       And why don't you?
[CARTER]:   Because I fear for mine and my families life.
[DEFENSE COUNSEL]: Your Honor, we object.

At this point, the jury was excused, and the trial court directed the State to examine the witness regarding the alleged threat to himself and his family.[3] Following this jury-out examination, the trial court instructed that the co-defendant's attorney be contacted and discuss this matter with his client. The trial court then advised defense counsel and the prosecutor that the co-defendant would be recalled to the witness stand. At this point, defense counsel moved for mistrial. The trial court advised that the motion for mistrial would be taken under advisement and that perhaps special instructions would be given.[4] Upon the jury's return to the courtroom, the jury was informed by the trial judge that the co-defendant was talking to his attorney and that he would be recalled to the stand later. Before being called for a second time, the co-defendant, with counsel present, advised the trial

---

[1] Although the Appellant raises the errors stemming from the co-defendant's Fifth Amendment assertion within the context of his right to a mistrial, we find these alleged errors are more appropriately reviewed under the guidelines of controlling case law decisions discussed within this section. We note, however, that the end result would be the same, *i.e.*, whether the error was harmless or prejudicial.

[2] Throughout the trial transcript, the name of Officer David Gibbons is used interchangeably as Officer David Givens. This is true with other witnesses' names, *i.e.*, Officer Harris (Officer Parrish). Efforts to reconcile these inconsistencies constitute a waste of judicial resources and could easily be remedied by having the witness spell his or her name for the record at the trial level.

[3] During the jury-out voir dire, Carter indicated that he and members of his family had received anonymous phone calls and a letter stating "if you show up in court and testify, you die."

[4] The record reflects that no ruling was even entered at trial upon the motion.

court, outside the jury's presence, that he would be invoking his Fifth Amendment right not to testify. Notwithstanding, the trial court directed that the witness would be required to testify before the jury "so that they can hear the fact that he's taken the Fifth." In compliance, the co-defendant was recalled and, in the jury's presence, invoked his Fifth Amendment right. At this point the witness was excused.

We began our review of this issue by first noting that there is no prosecution or defense right to have a witness claim under oath their Fifth Amendment privilege in the presence of the jury. *See State v. Dicks*, 615 S.W.2d 126, 129 (Tenn. 1981) (citing *United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir. 1973)). Indeed, "[w]here the government has sufficient reason to believe that a witness may invoke his or her Fifth Amendment rights in response to questioning, the better practice requires that the prosecutor so inform the court, thus allowing for a voir dire to be conducted out of the presence of the jury to determine 'reliably that the witness will claim the privilege and the extent and validity of the claim.'" *United States v. Victor,* 973 F.2d 975, 979 (1st Cir. 1992) (citing *United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir. 1973)). However, not every failure to follow this procedure constitutes reversible error. *Id.* Nonetheless, the prosecutor "may not deliberately call a witness closely identified with the defendant, knowing that the witness will assert his right to remain silent." *Busby v. Holt*, 781 F.2d 1475, 1477 (11th Cir. 1986).[5] The rational for calling the witness outside the jury's presence is clear.

> When a witness claims his privilege, a natural, and indeed almost inevitable, inference arises as to what would have been his answer if he had not refused. If the prosecution knows when it puts the question that he will claim the privilege, it is charged with notice of the probable effect of his refusal upon the jury's mind. . . . [I]t is clear, not only that the presumed answer has not the sanction of an oath, but what is even more important - that the accused cannot cross-examine. If they once do get before the jury, there arises, as we have said, a strong probability that they will be taken as evidentiary.

*United States v. Ritz*, 548 F.2d 510, 519 (5th Cir. 1977) (citing *United States v. Maloney*, 262 F.2d 535 (2nd Cir. 1959)).

To determine whether reversible error results from a witness' assertion of his or her Fifth Amendment rights in the presence of the jury, courts must conduct two distinct inquires:

> First, . . . error may result from prosecutorial misconduct when the government makes a conscious and flagrant' attempt to build its case out of inferences arising from the witness' assertion of the Fifth Amendment privilege. . . . [Second], . . . in the circumstances of a given case, reversible error may be committed where

---

[5] A prosecutor should not call a witness in the presence of the jury who the prosecutor knows will claim a valid privilege not to testify. STANDARD RELATING TO THE PROSECUTION AND THE DEFENSE FUNCTION § 3-57(c) (ABA Project on Standards for Criminal Justice, Approved Draft 1971).

inferences from a witness' refusal to answer add critical weight to the prosecution's case.

*Zeigler v. Callahan,* 659 F.2d 254, 271-72 (1ˢᵗ Cir. 1981) (citing *Namet v. United States*, 373 U.S. 179, 186-87, 83 S. Ct. 1151, 1154-55 (1963)) (internal citations omitted). In *State v. Maraschello*, 88 S.W.3d 586, 608 (Tenn. Crim. App. 2000), this court, in its adoption of *Namet,* observed:

> The two factors articulated above have subsequently been referred to as the '*Namet* test.' *See, e.g. United States v. Victor*, 973 F.2d 975, 979 (1ˢᵗ Cir. 1992). In applying this 'test,' courts more specifically consider (1) the prosecutor's intent in calling the witness; (2) the number of questions which elicit an assertion of the privilege; (3) whether either side attempted to draw adverse inferences, in closing argument or at any time during trial, from the witness' refusal to testify; (4) whether the inferences relate to central issues or collateral matters; (5) whether the inferences constitute the only evidence bearing upon the issue or are cumulative of other evidence; and (6) whether the trial court provided curative instructions. *Id.*; *United States v. Crozier*, 987 F. 2d 893, 901 (2ⁿᵈ Cir. 1993).

In applying the above factors to this case, the prosecutor did not inform the trial court of the witness' intent to assert his Fifth Amendment privilege. Even more troubling, the prosecutor, knowing that the witness did not want to testify because of threats, specifically elicited this response from the witness in the jury's presence. Additionally, invocation of the Fifth Amendment privilege terminated the Appellant's constitutional right to confront and cross-examine the witness.

Clearly, the witness' testimony of fear and his refusal to answer any further questions could be imputed by a rational juror to the Appellant's actions. Knowing beforehand the witness' desire not to testify and his reasons therefor, we can reach no conclusion other than that the prosecutor actions were intentional. Furthermore, improperly calling the co-defendant as a witness was further compounded by the prosecutor's comments in opening statement that the jury would hear testimony from the co-defendant "as to what happened." This statement clearly permitted the inference that the co-defendant was a cooperative witness and would be assisting the State in its prosecution of the Appellant. With regard to factor (4), we conclude that the witness' testimony of fear relates to the charge of aggravated assault, *i.e.*, whether the deputies reasonably feared bodily injury. Finally, with regard to factor (6), no curative instructions were provided to the jury by the trial court.

Based upon the foregoing reasons, we conclude that the trial court erred in permitting the witness to invoke his Fifth Amendment right before the jury on two separate occasions and that the prosecutor's action in deliberately eliciting improper testimony was highly prejudicial. Although we have previously concluded that the evidence was sufficient to support the convictions, the State's proof with regard to setting fire to land was wholly circumstantial in nature. Moreover, we would not characterize the proof as overwhelming. We are unable to conclude that the errors at trial did not affect the jury's verdict. Based upon these facts, we find reversible error.

### 3. Jury Instruction on Circumstantial Evidence

As his final issue, the Appellant argues that the trial court's instruction regarding circumstantial evidence "negate[d] the requirement that all elements necessary for a conviction must be proven beyond a reasonable doubt." The challenged instruction was given as follows:

> A Defendant may be convicted on direct evidence, circumstantial evidence or a combination of both. When the evidence is entirely circumstantial, then this jury would be justified in finding the defendant guilty. You must find that all the essential facts are consistent with your theory of guilt and the facts must exclude every other reasonable theory except that of guilt.

We note initially that the Appellant did not object to the instruction at the time it was given.

Under Tennessee's Constitution, a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). In evaluating claims of error in jury instructions, courts must remember that "jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning." *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998) (quoting *Boyde v. California*, 494 U.S. 370, 380-81, 110 S. Ct. 1190, 1198 (1990)). Therefore, we review each jury instruction to determine if it fairly defined the legal issue involved and did not mislead the jury. *State v. Hall*, 958 S.W.2d 679, 696 (Tenn. 1997).

The instruction submitted to the jury regarding circumstantial evidence is the verbatim instruction contained in the Tennessee Criminal Pattern Jury Instructions, 42.03, and is an accurate statement of the law regarding circumstantial evidence. *State v. Bane*, 853 S.W.2d 483, 487-88; *see also State v. Gregory Lance*, No. M2001-02507-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 28, 2003). Additionally, we note that, on several occasions, the trial court instructed the jury that the elements of the crimes had to be established beyond a reasonable doubt. The instructions completely and correctly charged the jury on the law applicable to this case. This issue is without merit.

### CONCLUSION

Based upon our conclusion that the errors committed at trial affected the jury's verdict, the judgments of conviction are reversed and vacated, and this case is remanded for retrial.

_____
DAVID G. HAYES, JUDGE