Nesbitt v. USA; Graffam                    CV-96-594-SD    12/16/98

UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


James M. Nesbitt, III


_____v.                                Civil No. 96-594-SD


United States of America;
Special Agent Gerald Graffam


                          O R D E R


     Plaintiff James M. Nesbitt, III, brings this civil action

for damages against the United States of America under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., and

against Special Agent Gerald Graffam, individually, under Bivens

v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403

U.S. 388 (1971) ("Bivens"). These claims arise out of Agent

Graffam's alleged participation in and knowledge surrounding the

search, seizure, and arrest of plaintiff. Plaintiff forwards two

FTCA causes of action (Count I: false imprisonment, and Count II:

intentional or negligent infliction of emotional distress), and

one Bivens cause of action (Count III: unreasonable search and/or

seizure). Jurisdiction is invoked under 28 U.S.C. § 1346(b) and

28 U.S.C. § 1331. Before the court is defendants' converted motion for summary judgment.[1]

## Background

### 1. Facts[2]

The facts surrounding this litigation date back to 1994, when the New Hampshire State Police began investigating the suspected drug activities of plaintiff James Nesbitt. The police used an informant, Samantha Medina, to arrange what they hoped would be a drug sale leading to the arrest of Nesbitt, a suspected cocaine trafficker. After several monitored phone calls with plaintiff, the informant arranged a meeting with plaintiff at the Cumberland Farms store in Milton, New Hampshire. Five law enforcement officers were in place May 10, 1994, the day of the arranged meeting between Nesbitt and the informant. Two state officers, Sergeant Steven Demo and Trooper Russell Conte, occupied a surveillance position to make the arrest at the appropriate time. One state officer, Corporal Francis Lord, rode

---

[1]This order addresses: defendants' motion to dismiss, document 26; plaintiff's objection, document 28; defendants' memorandum in support of the converted motion for summary judgment, document 37; plaintiff's memorandum in opposition, document 42; and defendants' reply to plaintiff's opposition, document 46.

[2]The record is reviewed in the light most favorable to the plaintiff, and the following facts are gleaned from the parties' motions, including supporting documents. Disputed facts are noted as necessary.

with the informant posing as her acquaintance. One federal officer, defendant Graffam, an agent with the Drug Enforcement Administration (DEA), accompanied the remaining state officer, Corporal Susan Forey, in a vehicle parked behind the Cumberland Farms store. Due to a shortage of manpower, Forey had contacted Graffam on May 9, 1994, to request DEA's assistance in the surveillance and possible arrest of plaintiff.

Prior to departure, Forey strip-searched the informant to check for any drugs or money. The officers thereafter outfitted the informant with a wire transmitter, which did not work correctly that day, and a $1,700 "flash roll" to show plaintiff. After arriving at Cumberland Farms, the informant spoke briefly with plaintiff, returned to Lord's pickup, and said that plaintiff wanted her to go for a ride. Against Lord's instructions, the informant got in plaintiff's car and they drove up to the store. She got out of the car, briefly entered the store, returned to plaintiff's car, and then came back over to Lord's pickup and said that everything was "all set" and that plaintiff was going to get "it." Demo and Conte followed as plaintiff drove away. When Lord asked the informant where the money was, she said that she gave it to plaintiff, which prompted Lord to order Demo and Conte to stop plaintiff and recover the money.

After driving away, plaintiff pulled into a parking lot about one and one-half miles from Cumberland Farms, followed by

Demo and Conte. With guns drawn, they asked him where the money was. He responded that he did not have it, and a pat search confirmed that he did not have the money. Demo then saw a clear bag of white powder that appeared to be cocaine on the floor of plaintiff's car. Plaintiff was then arrested and brought to the rear of the building for a strip search, which revealed nothing. Officer Conte contacted Officer Keyes to transport plaintiff to the police station, but he was never prosecuted because the substance in the bag tested negative for the presence of cocaine.

In the meantime, Agent Graffam walked from Cumberland Farms to the parking lot down the road where plaintiff's arrest took place. After arriving and learning that the money had not been found, he walked back along the road to see if plaintiff had tossed out the money along the way. The officers also searched the Cumberland Farms store for the money, but they found nothing. Eventually the informant admitted to Forey that she had kept the money hidden in her vagina, and she then produced the money.

Although both parties agree that the informant planted the white powder in plaintiff's car, they dispute why she did so. Plaintiff's theory all along has been that the informant planted the bag as part of a conspiracy with the officers to create pretextual probable cause. Plaintiff has to this date been unable to produce an affidavit from the informant. He does submit a copy of a transcribed interview between the informant, a private investigator, and a lawyer representing plaintiff. In

4

the interview, the informant indicates that she planted the evidence at the direction of the officers. Also, plaintiff disputes a statement made by Forey in her declaration, wherein Forey states the informant admitted to planting the bag under plaintiff's seat days before the arrest. This cannot be true, according to plaintiff, because he remembers cleaning his car at some point after the informant claims to have planted the bag, and he saw no such bag when he cleaned his car. Declarations have also been provided by Forey, Lord, Conte, Demo, and Graffam denying having provided the informant with any fake cocaine, and denying any knowledge that the informant intended to plant any fake cocaine.

Additional facts are noted as necessary.

### 2. Procedural History

Highlights of the procedural quagmire underlying this case include the following. Plaintiff filed a complaint in state court in August 1995 against the state and federal actors. After the action was removed to federal court, plaintiff voluntarily dismissed his claim against Agent Graffam, the only federal defendant, and this court remanded the case back to the state court in November 1995. On July 1, 1996, the Strafford County (New Hampshire) Superior Court, Mohl, J., granted summary judgment in favor of defendants on three of four counts. Count III of plaintiff's state complaint, alleging that Officer Keyes

5

verbally threatened to break Nesbitt's legs while transporting him to the station, survived summary judgment, but plaintiff voluntarily dismissed this claim during trial.

Plaintiff then appealed the summary judgment decision to the New Hampshire Supreme Court, and in the meantime filed this suit against Agent Graffam on November 27, 1996. After the New Hampshire Supreme Court summarily affirmed the summary judgment on September 22, 1997, the United States and Agent Graffam moved to dismiss this action based on qualified immunity and collateral estoppel. Plaintiffs objected, and this court converted the motion to dismiss to a motion for summary judgment on November 26, 1997, to allow additional discovery and submissions. On December 31, 1997, defendants filed a memorandum in support of the converted motion for summary judgment, and on February 2, 1998, plaintiffs filed a memorandum in opposition. Defendants then filed a rely brief on March 4, 1998.

<u>Discussion</u>

<u>1. Standard of Review</u>

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. This familiar standard has a "rhythm of its own," described as follows:

6

> The movant must put the ball into play, averring an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material. A genuine issue is one that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party. Put another way, a genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. A material issue is one that affect[s] the outcome of the suit, that is, an issue which, perforce, need[s] to be resolved before the related legal issues can be decided.

Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (quotations and citations omitted).

When the nonmovant bears the ultimate burden of proof on an issue, he may not defeat the motion "by relying upon mere allegations or evidence that is less than significantly probative." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "Summary judgment likely will be appropriate if the nonmovant elects to rest upon some combination of 'conclusory allegations, improbable inferences, and unsupported speculation.'" Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Furthermore, the motion for summary judgment "must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal." Id.

When a party pleads the affirmative defense of collateral estoppel at the summary judgment stage, issue preclusion on

7

summary judgment is appropriate when all the requirements of both issue preclusion and summary judgment are met. See 18 MOORE'S FEDERAL PRACTICE § 132.05[7] (3d ed. 1998); cf. Lillios v. Justices of the New Hampshire Dist. Ct., 735 F. Supp. 43, 45 (D.N.H.) (limited inquiry of motion to dismiss does not allow review of previous action for preclusive effect).

2. Plaintiff's Evidentiary Arguments

Plaintiff argues for the admissibility of the informant's unsworn, out-of-court statements. The statements are contained in a transcribed copy of a recorded interview between the informant, Sid Carlson (investigator for plaintiff), and Brian Stern (attorney for plaintiff). According to plaintiff, the statements are admissible as (1) statements against penal interest, (2) vicarious admissions by a party-opponent, and (3) co-conspirator statements. The statements are allegedly evidence that law enforcement officers directed the informant to plant fake drugs in plaintiff's car. The court finds that the statements are inadmissible under any of plaintiff's theories and therefore may not be considered in ruling on summary judgment.

Plaintiff first argues an exception to the hearsay rule under Rule 804(b)(3), Fed. R. Evid., as a statement against penal interest.[3] By stating in the interview that she agreed to plant

---

[3]Rule 804(b)(3), Fed. R. Evid., Statement against Interest, provides:

the fake drugs, the informant subjected herself to criminal liability for falsifying evidence. The government argues that the circumstances do not clearly indicate the trustworthiness of the statement, as required under Rule 804(b)(3).

As with any hearsay exception, it is the trustworthiness and reliability of certain statements that justifies their exception from the hearsay rule. In the case of a statement against interest, this guaranty of trustworthiness comes from the notion that "a reasonable man in his position would not have made the statement unless he believed it to be true." Id. Thus, unless a declarant is aware when making a statement that it is against his interest, the trustworthiness of the statement is called into question. See United States v. Albert, 773 F.2d 386, 390-91 (1st Cir. 1985); Roberts v. City of Troy, 773 F.2d 720, 725 (6th Cir. 1985). And where a declarant has a motive to misrepresent the facts through self-serving statements, the questionable reliability of the statement prevents its admission under Rule

---

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

9

804(b)(3).  See Albert, supra, 773 F.2d at 390; 5 WEINSTEIN'S FEDERAL EVIDENCE § 804.06[4][d][iii] (2d ed. Matthew Bender 1998).

Here, the informant's unsworn interview, full of leading questions, took place in front of the lawyer of the man whom she framed by planting fake drugs.  After already admitting to Forey that she planted the evidence, the informant clearly had motivation to exculpate herself by stating she planted the bag at the direction of the officers.  As far as the informant was concerned, her self-serving statements were exculpatory rather than against her own interest because they shift the blame to others.  Therefore, the unsworn interview lacks the necessary indicia of trustworthiness to qualify for admissibility as a statement against penal interest.  See United States v. Mackey, 117 F.3d 24, 29 (1st Cir. 1997), cert. denied, 118 S. Ct. 431, ___ U.S. ___ (1997); Albert, supra, 773 F.2d at 390; United States v. Zirpolo, 704 F.2d 23, 26-27 (1st Cir. 1983); United States v. Barrett, 539 F.2d 244, 253 (1st Cir. 1976).

Plaintiff next argues that the informant's unsworn interview is not hearsay because the informant's statements are a vicarious admission of a party opponent under Rule 801(d)(2)(D).[4]  Relying on Lippay v. Christos, 996 F.2d 1490 (3d Cir. 1993) (investigator

---

[4]Rule 801(d)(2)(D), Fed. R. Evid., provides that a statement is "not hearsay" if "[t]he statement is offered against a party and is . . . (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."

lacked sufficient supervisory control over informant to establish agency relationship), plaintiff argues that Forey's long-standing and supervisory relationship with the informant renders her an agent acting under color of state law. The first flaw in this argument is that it ignores the evidence indicating Agent Graffam's exceedingly limited relationship to the informant. At best, plaintiff can make an argument that Forey's lead investigative role and prior relationship established an agency relationship with the informant. Nothing, however, indicates that Agent Graffam "personally directed [the informant's] work on a continuing basis." Id. at 1498; see also Brookover v. Mary Hitchcock Mem'l Hosp., 893 F.2d 411, 413 (1st Cir. 1990) (no proof that declarant was agent or employee of party against whom statement was offered).

The second flaw in plaintiff's argument is that the declarant's statement must be "made during the existence of the [agency] relationship." Rule 801(d)(2)(D), Fed. R. Evid. Plaintiff's arrest occurred on May 10, 1994, the date of the arranged drug sale between plaintiff and the informant. The transcription of the informant's taped interview is dated December 21, 1994. See Plaintiff's Memorandum in Opposition (document 42). The alleged agency relationship therefore predates the informant's statements by over seven months. As stated by Forey in her affidavit:

11

> By the next day, I had reported the events of
> May 10, 1994 to my supervisors who debated whether
> or not to charge [the informant] with theft. It
> was ultimately concluded that criminal prosecution
> was not necessary because she would be blacklisted
> as an informant by the State Police, the Drug Task
> Force, and the DEA. Effectively, her service as
> an informant was ended.

See Defendants' Supplemental Memorandum, Exhibit A at 16 (document 37). Accordingly, there is no evidence that the informant's statements were made during the existence of the alleged agency relationship, and the statements are not admissible as vicarious admissions of a party-opponent under Rule 801(d)(2)(D). See United States v. Pena, 527 F.2d 1356, 1361 (5th Cir.1976) (declining to decide whether informant was an agent, because statements were made after informant's relationship with government ended), cert. denied, 426 U.S. 949 (1976); see generally Woodman v. Haemonetics Corp., 51 F.3d 1087, 1094 n.4 (1st Cir. 1995); Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d 1, 8 (1st Cir. 1986).

Lastly, plaintiff argues that the informant's unsworn interview is not hearsay because the statements are admissible under Rule 801(d)(2)(E), Fed. R. Evid., as statements by a co-conspirator.[5] It is true that statements made by a government informant may serve as co-conspirator statements, see United

---

[5]Rule 801(d)(2)(E) provides that a statement is "not hearsay" if "[t]he statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in the furtherance of the conspiracy."

<u>States v. TSE</u>, 135 F.3d 200, 209 (1st Cir. 1998), but the "statement must be made during the course of and in furtherance of that conspiracy." <u>Id.</u> (citing Rule 801(d)(2)(E), Fed. R. Evid., and <u>United States v. Machor</u>, 879 F.2d 945, 951 (1st Cir. 1989), <u>cert. denied</u>, 493 U.S. 1094 (1990)).

Assuming Agent Graffam was a co-conspirator, which the evidence does not support,[6] plaintiff's argument must fail for the same reasons that the vicarious admission theory fails. The informant's statements were not made during the course of the alleged conspiracy and are not in furtherance of that conspiracy. <u>See</u> Rule 801(d)(2)(E), Fed. R. Evid.; <u>Machor</u>, <u>supra</u>, 879 F.2d at 951 (noting that declarant and defendant must be members of conspiracy when statement is made in furtherance of conspiracy); <u>United States v. Pelletier</u>, 845 F.2d 1126, 1128 (1st Cir. 1988) (same); <u>cf.</u> <u>TSE</u>, <u>supra</u>, 135 F.3d at 209 (contents of statement showed that conspiracy had not ended).

Furthermore, the substance of the informant's unsworn interview is insufficient to establish a trialworthy issue as to Agent Graffam's objectively reasonable actions the day of the arrest. The thirty pages of the interview contain many unclear

_____

[6]The court recognizes that the substance of a co-conspirator's out-of-court statement are probative of the existence of the alleged conspiracy. <u>See</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 180 (1987); <u>TSE</u>, <u>supra</u>, 135 F.3d at 209. The content of the informant's interview nevertheless would not tip the scales in favor of finding a conspiracy between the informant and Agent Graffam.

statements, often in response to leading questions by an attorney, that fall short of creating a trialworthy issue as to whether Agent Graffam acted objectively unreasonably. The informant generally refers to being given a bag of cocaine to put under the plaintiff's seat, but is unable to identify who gave her the bag or who asked her to plant the bag. See Plaintiff's Memorandum, Exhibit 2 at 16, 26 (document 42). Even if the informant's unclear version of why she placed the drugs in plaintiff's car were admissible, Agent Graffam's limited actions on the day of plaintiff's arrest remain objectively reasonable.

### 3. Collateral Estoppel

#### a. State Court Proceedings

Due to the importance of the state court proceedings in relation to defendants' collateral estoppel defense, the summary judgment order is discussed in detail. Because plaintiff previously dismissed Agent Graffam, the only named defendants were the state law enforcement officers, including Francis Lord, Susan Forey, Russell Conte, Steve Demo, and Elizabeth Keyes. The complaint included four counts. Count I alleged that the defendants "conspired together and acted in concert to cause the arrest, imprisonment, and prosecution of plaintiff" in violation of 42 U.S.C. § 1983.

The court dismissed the conspiracy theory because plaintiff never submitted an affidavit from the informant, Medina, who

14

allegedly suggested during a taped interview that she was instructed to plant the fake drugs in plaintiff's car. The court went on to hold that:

> The plaintiff's conspiracy theory (Count I) relies exclusively on Medina's alleged knowledge of specific facts to show that defendants participated in a scheme to unlawfully arrest and prosecute plaintiff. Plaintiff has failed to provide any other proof that defendants conspired to arrest and imprison him. . . .
> . . . The transcript of Medina's interview is an unsworn statement and is inadequate to contradict the affidavits provided by defendant.

Nesbitt v. Lord, No. 95-C-284 (N.H. Super. Ct. Jan. 18, 1997), attached Defendants' Memorandum as Exhibit 4, at 6 (hereafter "summary judgment order"). The court also dismissed Count II, which alleged that defendants seized, searched, arrested, and imprisoned plaintiff without probable cause. As to this claim, the court ruled that even if plaintiff was arrested before defendants saw the bag in his car, sufficient probable cause existed to arrest based on the events leading to the arrest. Of the two remaining counts, the court also dismissed Count IV (issuing summons without probable cause) under the doctrine of prosecutorial immunity.

### b. Instant Proceedings

Defendants argue that plaintiff's Bivens and FTCA claims are barred by collateral estoppel because (1) the same facts and issues underlying the state conspiracy theory also underlie the

15

current federal claims, (2) the matter was actually litigated by way of the summary judgment motions, and (3) the state court's determination that there was no conspiracy was a necessary part of the judgment.  Plaintiff responds that the issues were not identical between the state court proceedings and the current proceedings.

The federal full faith and credit statute, 28 U.S.C. § 1738, requires that the "records and judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  This statute requires federal courts to give the same preclusive effect to state court judgments as would the courts of the state rendering the decision.  See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 476 (1982) (state court decisions have preclusive effect in subsequent Title VII actions in federal court); Allen v. McCurry, 449 U.S. 90, 94, 97-99 (1980) (state court decisions have preclusive effect in subsequent § 1983 actions in federal court); Kyricopoulos v. Town of Orleans, 967 F.2d 14, 15-16 (1st Cir. 1992) (full and fair opportunity to litigate probable cause in state criminal trial precludes relitigation of probable cause under § 1983 in federal court).  The purpose of section 1738 is to ensure that federal courts, not included within the constitution's full faith and

16

credit clause, are bound by state court judgments.  See <u>Kremer</u>, <u>supra</u>, 456 U.S. at 483 n.24.

Thus section 1738 "embodies the view that it is more important to give full faith and credit to state court judgments than to ensure separate forums for federal and state claims." <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 83 (1984); <u>see also</u> <u>Cuesnongle v. Ramos</u>, 835 F.2d 1486, 1497 n.8 (1st Cir. 1987) ("where a plaintiff neglects to raise a federal claim in a state court action, that plaintiff is estopped from raising the federal claim in federal court subsequent to a state court decision").  Doctrines of preclusion in the state-to-federal context "not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system."  See <u>Allen</u>, <u>supra</u>, 449 U.S. at 95-96.

Therefore, the question is whether the courts of New Hampshire would give preclusive effect to the issues raised in this action.  The three requirements of collateral estoppel are:

> [1] [T]he issue subject to estoppel must be identical in each action, [2] the first action must have resolved the issue finally on the merits, and [3] the party to be estopped must have appeared as a party in the first action, or have been in privity with someone who did so.  These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair opportunity to litigate the issue or fact in question.

17

<u>Daigle v. City of Portsmouth</u>, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987) (citations omitted). "While collateral estoppel does not require an identity of the earlier and later causes of action, it precludes the relitigation only of issues actually raised and determined in the earlier litigation." <u>Morgenroth & Assoc's, Inc. v. State</u>, 126 N.H. 266, 270, 490 A.2d 784, 786 (1985).

Here, plaintiff was clearly a party in the prior state litigation, and summary judgment disposed of the issues on the merits. <u>See</u> <u>New Hampshire York Co. v. Titus Constr. Co.</u>, 107 N.H. 223, 224-25, 219 A.2d 708, 710 (1966); <u>cf.</u> <u>ERG, Inc. v. Barnes</u>, 137 N.H. 186, 189, 624 A.2d 555, 557 (1993) (dismissal for failure to state a cause of action is on the merits). Thus, as evidenced by plaintiff's focus on the lack of identity of issues, the critical question in this case is whether the issues subject to estoppel are identical. More specifically, plaintiff contends that conspiracy simply is not a necessary element or an issue in this action,[7] but, rather, the issue is whether Agent Graffam "knew when he acted that probable cause did not exist for his search and seizure, and/or that fake cocaine was being

---

[7]Plaintiff, seeking to avoid the bar of collateral estoppel, now seeks to distance himself from this conspiracy theory. Given Agent Graffam's minimal participation in the arrest, however, it is difficult to envision how he could be liable for the arrest, if not as a co-conspirator.

18

employed to provide pretextual probable cause."  Plaintiff's Memorandum at 6-7 (document 28).

The court therefore must examine the extent to which the state court addressed issues that are identical to those presented by this case.  Plaintiff's current Bivens and FTCA claims are each addressed in turn.

Under Bivens, an implied constitutional cause of action exists for violations of Fourth Amendment rights by federal actors.  See Bivens, supra, 403 U.S. 388.  The factual basis of plaintiff's Bivens claim centers around whether there was an unreasonable search and/or seizure under the Fourth Amendment. As alleged by plaintiff:

> Defendant Graffam acted to search and/or seize the person and property of the plaintiff when no probable cause to search and/or seize the defendant existed, as defendant acted with knowledge that facsimile cocaine was being used as a pretext to supply probable cause for the search and/or seizure that would not have otherwise existed.

Complaint ¶ 32.  Plaintiff's current Bivens claim therefore will be barred by collateral estoppel if issues decided adversely to plaintiff in the prior section 1983 state litigation are identical to issues necessary to prevail in this Bivens action.

Arrest without a warrant does not violate the Fourth Amendment if the arresting officer has probable cause to believe that the suspect is violating or has violated the law.  See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); Alexis v.

19

McDonald's Restaurants of Mass., 67 F.3d 341, 351 (1st Cir. 1995). Probable cause exists when "the facts and circumstances within a police officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that a crime has been committed or is being committed." Alexis, supra, 67 F.3d at 351 (quotations omitted). The officer's particular state of mind is irrelevant to the legal justification for the officer's action "as long as the circumstances, viewed objectively, justify the action." Scott v. United States, 436 U.S. 128, 138 (1978). Thus the officer's actions are examined "under a standard of reasonableness without regard to the underlying intent or motivation of the officers involved." Id.; see also Lewis v. Kendrick, 944 F.2d 949, 953 (1st Cir. 1991); United States v. Ayres, 725 F.2d 806, 809 (1st Cir. 1984), cert denied, 469 U.S. 817 (1984).

Applying the objective legal standard of probable cause, the state court found that the state officers had probable cause to arrest plaintiff. Although the state court did not decide the issue of Agent Graffam's subjective knowledge, Agent Graffam's personal state of mind is irrelevant as long as the circumstances, viewed objectively, support probable cause. See Scott, supra, 436 U.S. at 138; Lewis, supra, 944 F.2d at 953; Ayres, supra, 725 F.2d at 809. Distinguishing the issue as Agent Graffam's subjective personal knowledge does not change the fact

20

that for collateral estoppel purposes the same legal standard is at issue in this case. Of course, if there was evidence that Graffam had information that undermined probable cause, the case would be different. Here, however, there is no such evidence.

Viewing the record in the light most favorable to plaintiff, the same objectively viewed circumstances supporting probable cause in the state litigation are at issue here with respect to Agent Graffam. See P I Enterprises, supra, 457 F.2d at 1013. Therefore, since lack of probable cause is a necessary element of plaintiff's Bivens claim, the collateral estoppel effect of the state court judgment prevents plaintiff from prevailing on his Bivens claim. Boiled down, plaintiff is seeking to relitigate the same facts against a different defendant in a different forum. Collateral estoppel, however, prevents relitigation of these same issues under a different legal theory, see Morgenroth & Assoc's, Inc., supra, 126 N.H. at 270, 490 A.2d at 786, even though against a different defendant, see Cutter v. Town of Durham, 120 N.H. 110, 111, 411 A.2d 1120, 1121 (1980).

Additionally, policies of federalism underlying the Rooker-Feldman doctrine are raised in this case. This jurisdictional doctrine prevents lower federal courts from reviewing state court judgments, and applies to claims that are "inextricably intertwined" with a prior state proceeding. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983). When a plaintiff's claims may succeed "only to the

21

extent the state court wrongly decided the issues before it," the Rooker-Feldman doctrine prevents a federal court from rehearing the issue. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring). It is well established that lower federal courts may not sit in review of a state court's order, see id.; Decker v. Hillsborough County Attorney's Office, 845 F.2d 17, 20-21 (1st Cir. 1988), and that the United States Supreme Court has exclusive jurisdiction to review state court judgments, see 28 U.S.C. § 1257.

Plaintiff submits in his supporting declaration that "my preference in continuing the present litigation would be to obtain grounds for the Court to set aside the prior summary judgment, to add as defendants in this Court one or more of the former state actor-defendants, and to hold them primarily responsible and liable for the wrongful law enforcement actions against me, and for my resulting injuries." Plaintiff's Supporting Declaration ¶ 7 (attached to Plaintiff's Opposition Memorandum) (document 42). Obviously, the court declines plaintiff's sweeping "preference" to simply "set aside" the state court judgment. See 28 U.S.C. § 1738. This court simply cannot review whether the state court correctly or incorrectly decided the issue of probable cause, and plaintiff's recourse is first with the New Hampshire Supreme Court and then with the United States Supreme Court. See 28 U.S.C. § 1257.

Accordingly, for the reasons discussed above plaintiff's Bivens claim (Count III) must be dismissed.

The next question is whether the issues decided in the state proceeding are identical to the issues necessary to prevail in the instant FTCA claims. Unlike Bivens, which is an individual action against federal officials, an FTCA claim is asserted against the federal government for intentional torts caused by federal officials. See 28 U.S.C. § 2671, et. seq. An action under the FTCA only exists when the laws of the state where the conduct occurred would permit the cause of action. See Carlson v. Green, 446 U.S. 14, 23 (1980). New Hampshire clearly recognizes an action for false imprisonment, which is defined as the "unlawful restraint of an individual's personal freedom." Welch v. Bergeron, 115 N.H. 179, 181, 337 A.2d 341, 343 (1975). Thus the alleged act must be unlawful, which requires the "absence of valid legal authority for the restraint imposed." Id.

As discussed above, the state court found probable cause existed for plaintiff's arrest. Therefore, valid legal authority existed for the arrest. See U.S. CONST. amend IV; State v. Christy, 138 N.H. 352, 356, 639 A.2d 261, 264 (1994); Kay v. New Hampshire Democratic Party, 821 F.2d 31, 34 (1st Cir. 1987). The fact that plaintiff was later released and charges were dropped does not change the result. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); United States v. Kozerski, 518 F. Supp. 1082

23

(D.N.H. 1981), aff'd, 740 F.2d 952 (1st Cir. 1984), cert. denied, 469 U.S. 842 (1984). Plaintiff therefore has failed to establish a trialworthy issue as to the false imprisonment claim, and Count I accordingly is dismissed.

Plaintiff's other FTCA claim, Count II, alleges intentional or negligent infliction of emotional distress. New Hampshire recognizes the torts of intentional and negligent infliction of emotional distress. See Morancy v. Morancy, 134 N.H. 493, 495-96 (1991); Thorpe v. State Dep't of Corrections, 133 N.H. 299, 303-04, 575 A.2d 351, 353 (1990). It is clear from plaintiff's complaint that his emotional distress theories are linked to his allegedly unlawful arrest: "The acts or omissions of defendant Graffam, by which he falsely imprisoned the defendant, constitute intentional, extreme and outrageous conduct." See Complaint ¶ 27. Given the validity of plaintiff's arrest and the objectively reasonable actions of Agent Graffam (see Qualified Immunity discussion, supra), plaintiff's emotional distress theories also must fail. See Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991) (under Massachusetts law, objectively reasonable arrest prevents recovery for intentional infliction of emotional distress). There is no evidence that Agent Graffam acted with "extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress." See Morancy, supra, 134 N.H. at 495-96, 593 A.2d at 1159. Furthermore, there is no evidence indicating plaintiff suffered any physical

24

manifestations from his alleged distress.  See id. at 495, 593
A.2d at 1159; Thorpe, supra, 133 N.H. at 303-04, 575 A.2d at 353.

Accordingly, Counts I and II are dismissed.[8]

4. Qualified Immunity

Even if the court did not give the state court judgment
preclusive effect, Agent Graffam would be entitled to the
affirmative defense of qualified immunity.  This good-faith
defense shields government officials performing discretionary
functions "from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The
scope of qualified immunity is broad, and protects "all but the
plainly incompetent or those who knowingly violate the law."
Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v.
Briggs, 475 U.S. 335, 341 (1986)).  The defendant officer is
entitled to immunity "if the federal law allegedly violated was
not clearly established at the time of the alleged violation, or
if, at summary judgment, there is no genuine dispute of material
fact that would prevent a finding that the defendants' actions,

_____

[8]Notwithstanding the collateral estoppel effect of the state
court probable cause finding, as set forth below in the qualified
immunity discussion, the court also independently finds that
probable cause existed for plaintiff's arrest.

25

with regard to applying or following such clearly established law, were objectively reasonable." Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (1st Cir. 1997) (citing Stella v. Kelley, 63 F.3d 71, 73 (1st Cir. 1995)).

There is no question that clearly established Fourth Amendment law at the time of plaintiff's arrest required probable cause to support the warrantless arrest. See Beck v. Ohio, 379 U.S. 89, 91 (1964). The issue, therefore, is whether Agent Graffam acted in an objectively reasonable fashion. Agent Graffam's actions are "deemed objectively reasonable unless there clearly was no probable cause at the time the arrest was made." Vargas-Badillo, supra, 114 F.3d at 6. This inquiry does not turn on whether the facts supported "legally sufficient grounds for [plaintiff's] warrantless arrest." Id. at 7. Rather, the question is if "the undisputed facts in this case preclude a finding that there was clearly no probable cause, or that 'no reasonably competent officer would have found probable cause.'" Id. (quoting Prokey v. Watkins, 942 F.2d 67, 72 n.4 (1st Cir. 1991)). Probable cause depends on whether at the time of arrest the facts and circumstances within Agent Graffam's knowledge, of which he had reasonably trustworthy information, were sufficient to warrant a prudent officer's belief that plaintiff had committed or was committing an unlawful act. See Beck, supra, 379 U.S. at 91; Vargas-Badillo, supra, 114 F.3d at 6.

26

The following undisputed facts could have led reasonable officers to conclude, based on the facts and circumstances, that plaintiff had committed or was committing a crime. Due to a shortage of manpower, Corporal Forey contacted Agent Graffam to assist in the surveillance and possible arrest of plaintiff during an arranged meeting with the informant. Forey informed Graffam that the informant would be wearing a wire and carrying a $1,700 "flash roll" to show plaintiff for the purchase of cocaine. Agent Graffam had received no other details regarding the investigation into plaintiff. During the meeting between plaintiff and informant, Graffam waited behind the building in Forey's car along with Forey. After the informant met with plaintiff in the parking lot of Cumberland Farms, she informed Corporal Lord that she gave plaintiff the $1,700 flash roll and he was leaving to get "it." At this point Lord ordered Demo and Conte to stop the plaintiff and obtain the money. Based on the prior telephone conversations between plaintiff and the informant, and the informant's previous relationship with law enforcement, the informant was considered reliable. Officer Graffam remained at the Cumberland Farms parking lot. Demo and Conte then followed plaintiff into a parking lot down the road. After observing a bag of white powder that appeared to be cocaine, they arrested plaintiff for possession of a controlled

substance.[9]  In the meantime, Graffam walked from the Cumberland Farms parking  lot down the road to where Demo and Conte arrested plaintiff.  Arriving after plaintiff was arrested, Graffam then walked back to Cumberland Farms along the road to see if plaintiff had discarded the money along the way.

Based on these facts, the court cannot conclude that there clearly was no probable cause or that no reasonably competent officer would have found probable cause.  See Vargas-Badillo, supra, 114 F.3d at 7.  The central disputed fact--why the bag of white powder was placed in plaintiff's car--does not affect Agent Graffam's objectively reasonable actions.  A well-trained officer in Agent Graffam's position could reasonably conclude that probable cause existed to arrest plaintiff.  As far as Agent Graffam knew, a drug sale had been arranged and the informant gave plaintiff money to go get drugs.  After the informant told Forey that she gave plaintiff the $1,700 to go get "it," a reasonably competent officer would conclude that plaintiff accepted the money for the purchase of drugs and would have probable cause to arrest plaintiff.

---

[9]Plaintiff contends that Demo walked directly to plaintiff's car, opened the door, and removed the package of white powder. According to plaintiff, this creates a reasonable inference that Demo knew exactly where to look for the evidence ahead of time because he knew it was already planted.  Aside from the stretched logic of this proposition, it still does not show that Agent Graffam acted in an objectively unreasonable manner.

Plaintiff also attaches importance to the informant's explanation of events.[10] Whether or not the informant is "credible" does not create a reasonable inference that Forey "fabricated" this version of events. Nor does the informant's creative story shed any light on whether Officer Graffam's actions were objectively reasonable. See Anderson, supra, 477 U.S. at 248 (only outcome determinative facts are material, and irrelevant factual disputes are not counted). After concluding that Forey "fabricated" the informant's story, plaintiff states, "Given that conclusion concerning Corporal Forey, the person in charge of the entire investigation, a factfinder would reasonably infer that everyone involved knowingly participated in the plaintiff's arrest on fabricated grounds." Plaintiff's Memorandum in Opposition at 6 (document 42) (emphasis added). This inferential leap is even more attenuated.

First, this statement assumes the conclusion that Forey's report contains a fabricated version of the informant's story. Second, by meeting with the entire team prior to the operation and accompanying Forey in her car, plaintiff assumes Agent Graffam must have "knowingly participated" in the alleged scheme

---

[10]Although somewhat hard to follow, the informant told Forey she planted the bag of fake drugs a few days earlier so that, on the day of the meeting, she could keep the money and plaintiff would be arrested. The money would then be used to buy drugs from and pay off an existing debt with another dealer. Then the informant would notify the police of the sale, leading to the arrest of the dealer.

to violate plaintiff's Fourth Amendment rights.  See id.
However, this inference is not reasonable in light of (1) the
undisputed facts demonstrating Agent Graffam's limited
participation in the operation, (2) Agent Graffam's sworn
affidavit denying any knowledge that evidence would be planted to
create pretextual probable cause, also confirmed by Forey's sworn
declaration, and (3) plaintiff's failure to produce a sworn
affidavit from the informant controverting Agent Graffam's sworn
testimony.  See Favorito v. Pannell, 27 F.3d 716, 721 (1st Cir.
1994) (nonmoving party's "bare assertion" that moving party's
uncontroverted evidence might be disbelieved is insufficient to
overcome summary judgment).  Accordingly, the court "cannot say
that there clearly was no probable cause from the point of view
of reasonable persons standing in [Agent Graffam's] shoes."
Vargas-Badillo, supra, 114 F.3d at 6.

Plaintiff also submits a personal affidavit denying that the
informant could have planted the bag days earlier, because he
recalls cleaning his car at some point after the informant
allegedly planted the bag.  This also does not raise a
trialworthy issue because it is not material to whether Agent
Graffam acted to violate plaintiff's Fourth Amendment rights.
See Anderson, supra, 477 U.S. at 248.  At best, this disputed
fact means that the informant planted the bag the day of the
arrest, but this still does not create a trialworthy issue as to
Agent Graffam's objectively reasonable actions.

30

Furthermore, Agent Graffam did not arrest plaintiff, nor did he participate by ordering plaintiff's arrest. This further calls into question plaintiff's theory that Agent Graffam violated plaintiff's Fourth Amendment rights. As plaintiff concedes, the state court decided the issue of whether Agent Graffam entered into any agreement with the other officers to violate plaintiff's rights. Without a conspiracy between Agent Graffam and the state actors who ultimately effected plaintiff's arrest, and without actually arresting or ordering plaintiff's arrest, it is difficult to see how Agent Graffam is liable for plaintiff's alleged violations.

## Conclusion

For the reasons stated above, the collateral estoppel effect of the prior state court judgment precludes plaintiff from prevailing in his instant suit against Agent Graffam. Additionally, Agent Graffam is entitled to qualified immunity. Summary judgment is granted in favor of defendants, and all counts are herewith dismissed. The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 15, 1998
cc: Gordon R. Blakeney, Jr., Esq.
    T. David Plourde, Esq.